U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

NOV 0 1 2007

ROBERT H. SHEMWELL, CLERK
BY _____
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

PAMELA HALL LYONS,                    CIVIL ACTION
          Appellant                   NO. CV06-1537-A

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER       JUDGE DEE D. DRELL
OF SOCIAL SECURITY,[1]                MAGISTRATE JUDGE JAMES D. KIRK
          Appellee


## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Pamela Hall Lyons ("Lyons") filed an application for disability insurance benefits ("DIB") on October 7, 2003, alleging a disability onset date of November 30, 2001 (Tr. p. 79), due to arthritis in her spine, pain in her back, right hip and leg, a sleeping disorder, and high blood pressure (Tr. p. 23). That application was denied by the Social Security Administration ("SSA") on December 2, 2003 (Tr. p. 23). Lyons did not appeal that decision.

Lyons filed applications for DIB and supplemental security income ("SSI") on February 20, 2004 (protective filing date), alleging disability onset dates of November 30, 2001, and August 1, 1999, respectively (Tr. pp. 84, 303) due to osteoporosis, pain in her right hip, back and leg, arthritis, high blood pressure, and

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Commissioner Astrue is substituted for Jo Anne B. Barnhart as the appellee in this action.

depression (Tr. p. 27). That application was denied by the SSA on March 18, 2004 (Tr. p. 27).

De novo hearings were held before an administrative law judge ("ALJ") on April 28, 2005 (Tr. p. 335), and March 1, 2006, at which Lyons appeared with her attorney and a vocational expert ("VE") (Tr. p. 314). The ALJ found that, although Lyons suffers from "severe"[2] degenerative disc disease of the lumbar spine with pain radiating into her right knee and legs, hypertension, and mild depression (Tr. p. 16), she has the residual functional capacity to perform sedentary work and can still perform her past relevant work as a telemarketer (Tr. p. 18). The ALJ concluded that Lyons was not disabled within the meaning of the Social Security Act at any time through the date of the ALJ's decision on March 24, 2005 (Tr. p. 18).

Lyons requested a review of the ALJ's decision, but the ALJ declined to review it (Tr. p. 5) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Lyons next filed this appeal for judicial review of the Commissioner's final decision. Lyons sets forth the following issues for review on appeal (Doc. Item 16):

1.  The Commissioner erred in finding Lyons' blood

---

[2] An impairment can be considered as not "severe" only if it is a slight abnormality which has such a minimal effect on the claimant that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Estran v. Heckler, 745 F. 2d 340, 341 (5th Cir. 1984). See also, Anthony v. Sullivan, 954 F.2d 289 (5th Cir. 1992).

2

pressure is controlled.

2. The Commissioner erred in failing to consider the side effects of Lyons' blood pressure medication, dry mouth and severe leg cramps.

3. The Commissioner erred in finding Lyons has the residual functional capacity to work as a telemarketer.

The Commissioner filed a brief in response to Lyons' appeal (Doc. Item 18), and Lyons filed a reply brief (Doc. Item 25). Lyons' appeal is now before the court for disposition.

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.  McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry

3

factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

## Summary of Relevant Facts

At the time of her supplemental administrative hearing on March 1, 2005, Lyons was 48 years old, 5'4" tall, weighed 165 pounds, had attended one and a half years of college (Tr. p. 339), and last worked in 2000 as a telemarketer (Tr. pp. 317-318). Lyons testified she stopped working when the telemarketing company's office closed down in Spring 2000; after it closed, Lyons did some part time work through about December 2000 (Tr. p. 318).

In August and September 2003, Lyons reported lower back pain radiating into her right leg (Tr. pp. 160, 162). X-rays of the lumbar spine showed Grade 1 spondylolisthesis of L4 on L5 with degenerative disc disease at that level as well as at L5-S1, and

4

degenerative joint disease on the left at L4-5 and L5-S1 and on the right at L5-S1 (Tr. p. 161). X-rays of Lyons' right hip showed degenerative arthritis and degenerative disc disease of the lumbar spine and moderate degenerative arthritis of both hips (Tr. pp. 163). In October 2003, an MRI of Lyons' lumbar spine showed degenerative changes mainly at L4-L5 with a small ascending herniation and anterolisthesis of L4 over L5 (Tr. p. 285).

Lyons had previously been diagnosed with depression related to her having a chronically ill husband and a child to care for and was prescribed Celexa (Tr. pp. 167-168, 176); in August 2003, her depression was considered resolved and her medication was discontinued (Tr. p. 167).

In February through June 2005, Lyons was frequently seen in the Winn Parish Medical Center Emergency Room, the Outpatient Medical Center, and LSU Health Sciences Center-Shreveport for insomnia and chronic pain (Tr. pp. 241, 243, 248, 259, 263, 264, 274-276, 277, 279, 283, 290, 292, 295), and was usually given Clonidine for hypertension, Motrin for pain, and Trazadone for insomnia, and consistently re-instructed as to taking her medications at home. In April 2005, it was noted that Lyons has an overactive bladder and she was given trial medication (Detrol) to control it (Tr. pp. 278-279).

In October 2005, Lyons was instructed in physical therapy exercises to strengthen her back and trunk in order to increase core strength, increase her pelvic tilt in standing, and decrease her back and leg pain; Lyons was to continue the exercises

independently (Tr. p. 298).

A consulting psychologist reviewed Lyons' medical records in March 2004 and found no evidence that she was current from depression (Tr. pp.216-228).

A psychological evaluation was performed on Lyons in June 2005 by Dr. Samuel D. Thomas, Ph.D. (Tr. p. 230-238). Lyons was found to have a pain disorder associated with both psychological factors and her medical condition, borderline intellectual functioning, and hip osteoarthritis with low back pain (Tr. pp. 237-238). Dr. Thomas concluded that Lyons' mental and emotional problems would not prevent her from working in a normal environment (Tr. p. 238).

At her administrative hearings, Lyons testified that she has a medical condition associated with her back and leg pain which causes her to need to urinate frequently; Lyons has to get up frequently in the night to urinate about three nights a week (Tr. p. 341). Lyons also testified that she has pain in her lower back, right hip, and right leg down to the knee (Tr. pp. 341-342). Lyons testified she has constant pain, which is worse when she is standing than when she is sitting, and it sometimes wakes her up when sleeping (Tr. p. 343). Lyons also testified that rain or cold air from air conditioning or cold weather makes her pain worse (Tr. p. 344). Lyons also testified that she was in the hospital the night before the hearing due to a spike in her blood pressure to 181/109; Lyons monitors her blood pressure (Tr. p. 345).

Lyons testified she can stand for ten to fifteen minutes (Tr.

6

pp. 348, 320), has difficulty bending and stooping, and can sit for as long as she needs to, but when she has a day with more than usual pain even sitting is difficult (Tr. pp. 321-322, 325, 347). Lyons testified that standing after sitting for a couple of hours does not alleviate her pain (Tr. p. 347). Lyons has short stabbing pains in the right leg when she stands or walks (Tr. p. 320). Lyons uses a cane to increase her stability when she walks but it was not prescribed for her (Tr. p. 348). Lyons testified that she can lift three to five pounds (Tr. p. 322), can pick up a gallon of milk, but has difficulty doing so when her pain is worse (Tr. p. 348), and does not have any difficulty picking up small objects (Tr. p. 349), although her fingertips sometimes become numb and cold (Tr. p. 322). Lyons testified that she does very little housework and she cannot sweep, mop or vacuum, she only does light food preparation (sandwiches, microwave dinners, 30 minute meals), she does not do yard work or gardening, she washes dishes while sitting down, and she makes her own bed (Tr. pp. 322, 350-351). Lyons also testified that she watches television one to three hours a day, goes to bed by midnight, gets up at about 5:00 in the morning, lays down for a little while during the morning, is able to care for herself unless her pain is worse than usual, does laundry, grocery shops (but leans on the cart), and attends church on Sundays (Tr. pp. 323-324, 352-353, 356).

Lyons testified that she has been prescribed 800 mg. of Ibuprofen, Clonidine for hypertension, and Motrin (Tr. p. 354), but that she just takes a generic form of Aleve® for pain (Tr. p. 327).

7

Pain wakes Lyons up at night about once a week (Tr. p. 355).  Lyons also testified that the need to urinate frequently makes her get up in the night (Tr. p. 324).  Laying down is usually the most comfortable position for Lyons (Tr. p. 355).  Lyons has more pain in the mornings, when she first gets up, until she moves around some (Tr. p. 326).  Lyons also testified that she believes her blood pressure rises when her pain level is high, and that causes her to urinate more frequently (Tr. pp. 326, 357).  Lyons testified that her blood pressure medication makes her light-headed if she does not eat something when she takes it (Tr. p. 320).  Finally, Lyons testified that she cannot return to work as a telemarketer because she does not sleep well at night, she has to get up early to get her eleven year old son up and dressed for school, the air conditioning in the office would make her leg hurt worse, she does not drive when she has a bad day with more severe pain, her constant pain would show in her voice when talking on the phone, she has to go to the bathroom frequently, there are no telemarketing jobs in Winnfield, Louisiana, and she would frequently have to call in sick (Tr. pp. 328-329).

   The VE testified that Lyons' past relevant work as a telemarketer and as a computer lab assistant was sedentary, semi-skilled work, and that her other past work had been light to medium level work (Tr. p. 331).  The VE further testified, in response to a hypothetical question about a 48 year old person with 14 years of school, and the ability to perform work involving unlimited sitting but no more than 15 minutes of standing continuously or five

8

minutes of walking continuously, that such a person could work as a telemarketer or a computer lab assistant (Tr. p. 332). The VE testified that there are 306,000 sedentary jobs in the national economy and 30,000 to 35,000 telemarketing jobs in the national economy (Tr. pp. 332-333); however, if the person could not work in an air conditioned environment, her job base would be reduced by about 75 percent (Tr. p. 332), and if she had to go to the bathroom frequently (every 60 to 90 minutes), her job based would be reduced by about 99 percent (Tr. p. 333).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Lyons (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial

9

burden of showing that she is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Lyons has not engaged in substantial gainful activity since November 30, 2001 (Tr. pp. 14, her disability insured status expired on December 31, 2005 (Tr. p. 17), and she has severe impairments of degenerative disc disease of the lumbar spine with pain radiating into her right knee and legs, hypertension, and mild depression, but she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 16).  The ALJ then found that, as of March 24, 2005, Lyons had the residual functional capacity to perform the full range of sedentary work and, therefore, was still able to perform her past relevant work as a telemarketer (Tr. p. 18).  The sequential analysis thus ended at Step 4, with a finding that Lyons was not disabled (Tr. p. 18).

Issue No. 1 - Blood Pressure

Lyons contends the Commissioner/ALJ erred in finding her blood pressure is controlled.  Lyons cites portions of the medical records which indicate episodes of uncontrolled blood pressure (Tr. pp. 160, 165, 243-244, 263-264).  In September 2003, when she reported problems with pain, Lyons' blood pressure was 160/100 (Tr. p. 160).  In December 2003, Lyons' blood pressure was 150/90 (Tr.

p. 165). In May 2005, Lyons reported problems sleeping and asked for Zoloft, her blood pressure was 153/107 at 2:05 and was 167/98 at 2:40 (Tr. pp. 243-244); Lyons was discharged with instructions on use of home medications (Tr. p. 244). In June 2005, her blood pressure was 160/108 (Tr. p. 290). In November 2005, Lyons complained she felt like her blood pressure was high and she had leg pain (Tr. p. 263); Lyons' blood pressure was 161/104 and she was given Clonidine and Motrin and instructed as to taking her medication (Tr. p. 264).

Lyons claims her blood pressure is uncontrolled, but cites only six instances in a three year period (2003-2005). Lyons' doctors have never mentioned or diagnosed uncontrolled hypertension. Lyons has consistently been prescribed Clonidine for hypertension. Common sense indicates that if Clonidine was not adequately controlling Lyons' hypertension, her doctors would have changed her medication. If an impairment is controlled by medication or therapy, it cannot serve as a basis for a finding of disability. Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988). Therefore, Lyons has not carried her burden of proving she suffers from uncontrolled hypertension.

Since substantial evidence supports the Commissioner's conclusion that Lyons' hypertension is controlled, this issue is meritless.

Issue No. 2 - Medication Side Effects

Next, Lyons contends the Commissioner erred in failing to consider the side effects of Lyons' blood pressure medication, dry

11

mouth and severe leg cramps.  However, Lyons testified she has short stabbing pains in the right leg when she stands or walks; there is no medical evidence or testimony to show Clonidine causes Lyons' legs to cramp or causes dry mouth.  At her administrative hearings, Lyons only testified that Clonidine makes her light-headed if she takes it without food (Tr. p. 320); Lyons did not mention cramps or dry mouth.

Since there is no evidence that Clonidine caused Lyons to have leg cramps or dry mouth, the Commissioner did not err in failing to consider these complaints.  This issue is also meritless.

Issue No. 3 - Residual Functional Capacity

Lyons contends the Commissioner erred in finding Lyons has the residual functional capacity to work as a telemarketer.

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting.  Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations.  20 C.F.R. §404.1545, §416.945.  Although the burden of proof in a disability case is on the claimant to show that she is unable to perform her usual line of work, once that fact is established, the burden shifts to the Commissioner to show the claimant is able to perform some other kind of work available in the national economy.  Herron v. Bowen, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein.  Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984).  The Commissioner has the burden to establish a claimant's residual functional capacity.

12

<u>Leggett v. Chater</u>, 67 F.3d 558, 565 (5th Cir. 1995).

The ALJ's finding that Lyons could perform her past relevant work indicates the ALJ's conclusion that Lyons did not meet her burden of proving that she could not return to such work. Lyons argues that she cannot return to her work due to severe leg cramps, a side effect of Clonidine, if she sits too long. However, as stated above, there is no evidence in the administrative record that Lyons suffers from leg cramps when sitting. In fact, Lyons testified that she can sit without any problems. Despite the fact that two disability determinations consultants determined that Lyons can stand and/or walk for much longer than Lyons claims (Tr. pp. 198, 208), the ALJ accepted Lyons' testimony that she cannot stand longer than fifteen minutes without leg and back pain and found she was only capable of sedentary work.

Lyons also argues she has to get up and go to the restroom often, as she testified at her hearings. Lyons contends that some days she only has to go to the restroom every one to three hours, while other days she goes every 15 to 45 minutes. The VE testified the need to make frequent trips to the bathroom, every 60 to 90 minutes, would reduce Lyons' job base by 99 percent. However, there was only one medical record which noted Lyons' overactive bladder (Tr. pp. 278-279). Lyons was prescribed Detrol to try to control her overactive bladder in April 2005. There are no further complaints of bladder problems in Lyons' medical records after that time. Although Lyons states in her brief (Doc. Item 25) that Detrol did not work and she testified at her hearing that she still

13

has a bladder problem, apparently Lyons failed to seek further medical care for the problem. As stated above, a medical condition that can reasonably be remedied or controlled by surgery, treatment, or medication is not disabling. Johnson, 864 F.2d at 348; 20 C.F.R. §§ 404.1530, 416.930. There are no medical records to show the Detrol was not successful or that Lyons sought further medical care for her bladder problem. Therefore, Lyons has not carried her burden of proving she has an overactive bladder which, despite treatment, precludes her from working and thus is disabling. The ALJ did not err in disregarding Lyons' claim that her overactive bladder problem precludes her form performing sedentary work.

Lyons also contends her medication side effect of dry mouth also prevents her from returning to work as a telemarketer. Lyons points out that having dry mouth causes her to increase her liquid intake, which in turn increases the number of trips she has to make to the bathroom. However, as previously noted, there is no evidence in the administrative record to support Lyons' claim that she suffers from dry mouth.

Lyons contends in her response brief (Doc. Item 25) that her degenerative disc disease is disabling because it will become progressively worse. However, the Commissioner did not find it was disabling at the time of the ALJ's decision; if and when it does become disabling, Lyons may file a new claim for benefits. The subsequent deterioration of a claimant's previously non-disabling condition, after the date of the Commissioner's decision, may form

14

the basis of a new claim. <u>Johnson v. Heckler</u>, 767 F.2d 180, 183 (5th Cir. 1985). Finally, Lyons contends she is disabled by her depression. However, the medical records clearly show that Lyons does not suffer from any mental or emotional impairment that prevents her from working.

Therefore, substantial evidence supports the Commissioner's finding that Lyons has the residual functional capacity to do her past relevant sedentary work as a telemarketer. These issues are also meritless.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Lyons' appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND**

**LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 30th day of October, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE